**Keva Nell BATTLES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–00–00104–CR.**

Court of Appeals of Texas, Tyler.

March 28, 2001.

Eric Albritton, Rockwall, for Appellant.

Edward Marty, Tyler, for State.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

DAVIS, Chief Justice.

Appellant Keva Nell Battles pleaded not guilty to the misdemeanor offense of stalking. A jury found her guilty and assessed her punishment at confinement in the county jail for one year and a fine of $4,000.00. Both the fine and the period of confinement were probated. Appellant raises four issues on appeal. We affirm.

## BACKGROUND

This is a stalking case brought pursuant to TEX.PEN.CODE ANN. § 42.072 (Vernon Supp.2001). Appellant was charged with violating this statute by reason of her conduct toward the complainant, Lakesha Sheenay Ford ("Ford"). Appellant and Ford both had children fathered by the same man, John Toliver.

According to Ford, the stalking began in June 1999. Ford testified that on June 7, 1999, she noticed Appellant following her in a red Nissan Sentra as she took her infant son, Jonathan, to daycare and then as she continued on to work. The next day, June 8, 1999, she again saw Appellant

following her, but she lost her in the morning traffic. Appellant followed Ford again the next day, June 9, 1999, first to the daycare, then to work, this time blowing her horn at Ford. Ford testified she believed Appellant returned to the daycare after following her to work on one or more occasions. This belief was corroborated by the administrator of the daycare.

The administrator of the daycare, Idella Pollard ("Pollard") testified that at about 7:00 a.m. on June 7 or 8, she saw Appellant at the front desk of the daycare reading the sign-in sheet. When she asked Appellant if she could help her, Appellant told her she was looking for a job. Pollard told her there were currently no openings but that she would give her an application if she wanted one. Appellant then made inquiry about Ford's minor son, Jonathan. Pollard asked her if she was a relative, and Appellant replied that she was Johnathan's cousin, and that she might have to pick him up sometime. Ford, however, told the jury that Appellant was not related to her in any way, and Appellant would have no reason to believe she would ever be called upon to pick up Johnathan from daycare. According to Pollard, Appellant left the daycare that morning without asking for an application.

Pollard also testified that the "next day or so" Ford appeared shaken when she arrived at the daycare. She asked Ford what was the matter, and Ford told her she was being stalked. Pollard went outside and saw Appellant sitting across the street in a red Nissan. Appellant came into the daycare later that morning, looked at the sign-in sheet again, and looked around as if she were looking for something or someone. Pollard confronted Appellant and told her to leave and not come back to the daycare. Appellant again left without getting an application.

Ford testified about a number of other instances of Appellant following her. Ford said that on June 23, 1999, Appellant again followed her to work, but Ford got behind her, got her license plate number and called 911. Before the police arrived, Appellant had gone. Ford also related another occasion when she and her son were driving in her car and Appellant pulled her car in front of her, slamming on her brakes, but Ford avoided a collision.

Additionally Ford testified that in late June 1999, Appellant called her on the phone at John Toliver's mother's house "talking a whole bunch of noise" about their respective relationships with John Toliver. Appellant told Ford that she should have somebody "watch over" her and her son, Johnathan. Ford testified that she believed Appellant's conduct was directed specifically at her, and that she was scared, fearing bodily injury for herself and her son. She feared that Appellant might hurt or kill Johnathan. Ford testified that Appellant still drove by her home but had not made any more threatening phone calls to her.

In open court, Ford identified Appellant as the person who had followed her repeatedly and called her on the phone.

Appellant testified on her own behalf. She told the jury she drove a red Nissan Sentra. Appellant said she had never had any conversation with Ford on the phone or in person, had never followed Ford in her car, and had never threatened Ford in any manner. Appellant denied all allegations. In response to questions by the prosecutor, Appellant maintained that Ford and Pollard were lying in court. Appellant told the jury she did not know of Johnathan's parentage until Ford testified in court.[1]

<hr>

1. However, when questioned by the prosecu- tor, Appellant said she had learned of Johna-

Appellant testified that she went to the Mount Calvary Baptist Church daycare in June of 1999 seeking employment. The daycare is less than one mile from her home. Appellant did not apply for employment at any other daycare centers in June of 1999. Appellant said that she returned a second time to the daycare because on her first visit, she had been given an application for enrollment for a child. Appellant testified that she did get an application for employment on her second visit but never returned it.[2] Appellant denied that she had inquired about Johnathan during either visit. Appellant testified that during the second visit, Pollard confronted her and "made allegations about [appellant] trying to harm a child."

Appellant was charged by information with stalking Ford by, on more than one occasion and pursuant to the same scheme or course of conduct directed specifically at Ford, knowingly engaging in conduct, including following Ford, that Appellant knew or reasonably believed Ford would regard as threatening bodily injury or death for Ford, that caused Ford to be placed in fear of bodily injury or death for herself, and that would cause a reasonable person to fear bodily injury or death for herself.

### LEGAL SUFFICIENCY OF THE EVIDENCE

In issues one and two, Appellant argues that the evidence is legally insufficient to support her conviction. The standard of review for legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Whitaker v. State*, 977 S.W.2d 595, 598 (Tex. Crim.App.1998), *cert. denied*, 525 U.S. 1108, 119 S.Ct. 878, 142 L.Ed.2d 777 (1999). The jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim.App.1994). Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Losada v. State*, 721 S.W.2d 305, 309 (Tex.Crim.App. 1986). The jury may believe some witnesses and refuse to believe others, and it may accept portions of the testimony of a witness and reject other portions. *Id.*

The stalking statute reads in its entirety:

(a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct, including following the other person, that:

(1) the actor knows or reasonably believes the other person will regard as threatening:

(A) bodily injury or death for the other person;

(B) bodily injury or death for a member of the other person's family or household; or

(C) that an offense will be committed against the other person's property;

(2) causes the other person or a member of the other person's family or household to be placed in fear of bodily injury or death or fear that an

than's parentage when she read Ford's statement before trial.

**2.** However, Appellant did not produce the application in court but said she had thrown it away.

offense will be committed against the other person's property; and

(3) would cause a reasonable person to fear:

 (A) bodily injury or death for himself or herself;

 (B) bodily injury or death for a member of the person's family or household; or

 (C) that an offense will be committed against the person's property.

(b) An offense under this section is a Class A misdemeanor, except that the offense is a felony of the third degree if the actor has previously been convicted under this section.

(c) In this section, "family," "household," and "member of a household" have the meanings assigned by Chapter 71, Family Code.

TEX.PEN.CODE ANN. § 42.072 (Vernon Supp. 2001). The stalking statute includes multiple theories of criminal liability, but the charging instrument in the instant case alleges only one of those theories.[3] *See Clements v. State,* 19 S.W.3d 442 (Tex. App.—Houston [1st Dist.] 2000, no pet. h.).

Under the information in the instant case, the State was required to prove beyond a reasonable doubt that on more than one occasion and pursuant to the same scheme or course of conduct directed specifically at Ford, (1)Appellant knowingly engaged in conduct, including following Ford, (2) Appellant knew or reasonably believed Ford would regard her conduct as threatening bodily injury to or the death of Ford; (3) Appellant's conduct caused Ford to be placed in fear of bodily injury or death for herself, and (4) Appellant's con-

duct would cause a reasonable person to fear bodily injury or death for herself. Appellant argues that the evidence is legally insufficient to prove "conduct" and elements (2) and (4).

■ Appellant's argument is founded, at least in part, on her assertion that the "conduct" element of the stalking statute does not include speech.[4] This is simply incorrect. In the Penal Code, "conduct" is defined as "an *act* or omission and its accompanying mental state." TEX.PEN. CODE ANN. § 1.07(a)(10) (Vernon 1994) (emphasis added). The Penal Code definition of "act" expressly includes "speech." *See* TEX.PEN.CODE ANN. § 1.07(a)(1).

■ We must first determine whether a rational trier of fact could have found that Appellant, on more than one occasion and pursuant to the same scheme or course of conduct that was directed specifically at Ford, knowingly engaged in conduct, including following Ford. Viewed in the light most favorable to the verdict, the evidence at trial established that Appellant, on at least three occasions, followed Ford in her car. On at least two occasions, Appellant went into the daycare where Ford left her infant son, and Appellant did not apply for employment there. On at least one occasion, Appellant inquired at the daycare about Ford's child to whom she was not related. Moreover, on at least one occasion, Appellant tried to cause a collision between her car and Ford's. Finally, the evidence showed that Appellant called Ford on the telephone and told her that someone should "watch over" Ford and Johnathan. We conclude that a rational trier of fact could have found beyond a

---

**3.** The information did not charge that Appellant engaged in conduct that threatened bodily injury or death for a member of Ford's family or household or a crime against Ford's property under sections 42.072(a)(1)(B), (a)(2), and (a)(3)(B) or 42.072(a)(1)(C),(a)(2), and(a)(3)(C).

**4.** Appellant cites no authority for this argument.

reasonable doubt that Appellant, on more than one occasion and pursuant to the same scheme or course of conduct that was directed specifically at Ford, knowingly engaged in conduct, including following Ford.

■ Next we consider whether a rational trier of fact could have found that Appellant knew or reasonably believed Ford would regard her conduct as threatening bodily injury or death for Ford. Viewed in the light most favorable to the verdict, the evidence at trial established that Pollard confronted Appellant during the second visit to the daycare about "harming a child" and told her not to come back to the daycare. At trial, Appellant admitted that Pollard had confronted her; therefore, she was put on notice that her conduct was alarming Ford. Coupling this with the ominous words of the phone call which followed, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant knew or reasonably believed Ford would regard her conduct as threatening bodily injury or death for Ford.

■ Although Appellant does not raise the issue on appeal, for the sake of clarity in our application of the law to the facts, we note that viewed in the light most favorable to the verdict, the evidence at trial established that Ford feared Appellant might hurt or kill her or Johnathan. Ford testified that she was scared. Pollard observed Ford to be "shaken" on one occasion when Appellant followed Ford to the daycare, and on one occasion, Ford called 911 when Appellant was following her.

■ Finally, we must determine whether a rational trier of fact could have found that Appellant's conduct would cause a reasonable person to fear bodily injury or death for herself. Considering the totality of the circumstances and the pattern of behavior exhibited by Appellant, we conclude that a rational trier of fact could have found beyond a reasonable doubt that a reasonable person would also have been placed in fear of bodily injury or death.

Having concluded that a rational trier of fact could have found each and every essential element of the offense of stalking beyond a reasonable doubt, we overrule issues one and two.

### FACTUAL SUFFICIENCY OF THE EVIDENCE

■ In issue three, Appellant argues that the evidence is factually insufficient to support her conviction. When reviewing the factual sufficiency of the evidence, we review all the evidence, but not in the light most favorable to the prosecution. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997). We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim.App.1996). We review the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim. App.1996). We review the fact finder's weighing of the evidence and are authorized to disagree with the fact finder's determination. *Clewis,* at 133. This review must employ appropriate deference to prevent an appellate court from substituting its judgment for that of the fact finder, and any evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility to be given to the testimony of the witnesses. *Jones,* at 648.

■ The Court of Criminal Appeals revisited the degree of deference a reviewing court provides to the fact finder under

a factual sufficiency review in *Johnson v. State*, 23 S.W.3d 1, 8 (Tex.Crim.App.2000). A factual sufficiency analysis can consider only those few matters bearing on credibility that can be fully determined from the cold appellate record. *Johnson v. State*, 23 S.W.3d at 8. Such an approach occasionally permits some credibility assessment but usually requires deference to the jury's conclusion based on matters beyond the scope of the appellate court's legitimate concern. *Id.* Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered. *Id.* This evidence is then accorded the appropriate consideration by the reviewing court in the context of its overall analysis of the relevant evidence. *Id.*

The testimony of Appellant, of course, contradicted that of Ford and Pollard. However, the only evidence in the record that tends to disprove that Appellant committed the offense of stalking is Appellant's own testimony which the jury was free to, and apparently did, disbelieve.[5] We hold that the verdict is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." Issue three is overruled.

### CONSTITUTIONALITY OF THE STALKING STATUTE

In issue four, Appellant argues that the stalking statute is unconstitutionally vague for failure to define "pursuant to the same scheme or course of conduct."

 It has long been the rule that constitutional errors may be waived or for-feited by a failure to make a timely and specific assertion of the right. *Boulware v. State*, 542 S.W.2d 677, 682 (Tex.Crim.App.1976). To preserve for appellate review an attack on the constitutionality of a statute as applied to her, a defendant must have first raised the issue in the trial court. *Curry v. State*, 910 S.W.2d 490, 496 (Tex.Crim.App.1995); *Garcia v. State*, 887 S.W.2d 846, 861 (Tex.Crim.App.1994); *Sullivan v. State*, 986 S.W.2d 708, 711 (Tex. App.—Dallas 1999, no pet.). The record reveals, and Appellant concedes, that the issue of the unconstitutional vagueness of the stalking statute as applied to her was not raised in the trial court by objection or motion for new trial. Therefore, to the extent Appellant challenges the validity of the stalking statute as applied to her, she has waived this issue. Appellant was not required, however, to raise below a constitutional challenge that the statute is facially invalid. *Garcia*, 887 S.W.2d at 861. Therefore, we will address the issue of whether the stalking statute is unconstitutionally vague on its face because it does not define the phrase "pursuant to the same scheme or course of conduct."

 When reviewing the constitutionality of a statute, we presume the statute is valid and the legislature has not acted unreasonably or arbitrarily in enacting the statute. *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex.Crim.App.1978). The burden rests on the party challenging the statute to establish its unconstitutionality. *Cotton v. State*, 686 S.W.2d 140, 145 (Tex.Crim.App.1985); *Ex parte Granviel*, 561 S.W.2d at 511. We uphold the statute if we can determine a reasonable construction which will render it constitutional and carry out the legislative intent. *See Ely v. State*, 582 S.W.2d 416, 419 (Tex.Crim.App. 1979).

---

**5.** The State is quite correct when it points out that Appellant's brief is wholly lacking in rec-ord references on this issue. *See* TEX.R.APP.P. 38.1

To pass a vagueness challenge, a criminal statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *See Grayned v. Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–299, 33 L.Ed.2d 222 (1972); *Long v. State*, 931 S.W.2d 285, 287 (Tex.Crim.App.1996). Also, the law must establish determinate guidelines for law enforcement. *Grayned*, 408 U.S. at 108–09, 92 S.Ct. at 2298–299, 33 L.Ed.2d 222; *Long*, 931 S.W.2d at 287. Finally, where First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. *Grayned*, 408 U.S. at 109, 92 S.Ct. at 2299, 33 L.Ed.2d 222.

Appellant argues that failure to define one particular phrase in the stalking statute—"pursuant to the same scheme or course of conduct"—renders the statute unconstitutionally vague. Appellant does not allege First Amendment implications. Therefore, our application of the law to the instant statute will be limited to an evaluation of whether the offending phrase gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited and establishes determinate guidelines for law enforcement.

A statute is not rendered vague merely because words or terms are not specifically defined. *See Ahearn v. State*, 588 S.W.2d 327, 338 (Tex.Crim.App. 1979). "Conduct" is specifically defined in the Penal Code as "an act or omission and its accompanying mental state." TEX.PEN. CODE ANN. § 1.07(a)(10). In construing the other words of the offending phrase, we must apply the plain meaning of its words unless the language of the statute is ambiguous or unless this would lead to absurd results. *Lane v. State*, 933 S.W.2d 504, 514 (Tex.Crim.App.1996). "Scheme" is inarguably a term of common understanding, as is "pursuant to." We hold that the

phrase "pursuant to the same scheme or course of conduct" is a term of common understanding, qualified only by the Penal Code definition of "conduct." *See Sendejo v. State*, 676 S.W.2d 454 (Tex.App.—Fort Worth 1984, no pet.) (holding that "scheme" and "pursuant to a continuing course of conduct" need not be defined by the trial court in its charge to the jury in an aggregation theft case because the terms are "terms of common understanding."). Therefore, we hold that the phrase "pursuant to the same scheme or course of conduct" does give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and does establish determinate guidelines for law enforcement.

We hold that failure to define "pursuant to the same scheme or course of conduct" does not render the stalking statute unconstitutionally vague on its face. Issue four is overruled.

We affirm the judgment of the trial court.