**Bradley Clifford SISK, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–00–145–CR.**

Court of Appeals of Texas,
Fort Worth.

April 11, 2002.

Denise Perkins, Granbury, for Appellant.

Richard L. Hattox, District Attorney and Robert Christian, Assistant District Attorney, Granbury, for State.

PANEL F: CAYCE, C.J.; DAY and LIVINGSTON, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

In three points, appellant appeals his conviction for violating a protective order by stalking his ex-wife, Beth Sisk Caywood. We will affirm.

## BACKGROUND

On March 8, 1999, the judge of the County Court of Hood County issued a Family Violence Protective Order pursuant to chapters 71 and 81 of the Texas Family Code. TEX. FAM.CODE ANN. chs. 71, 81 (Vernon Supp.2002). The order recites that the applicant, Caywood, is appellant's ex-wife, that family violence has occurred and is likely to occur in the future, and that a protective order is necessary for the safety and welfare of Caywood and for the prevention of family violence. The order prohibits appellant from: committing family violence; communicating directly with Caywood in a threatening or harassing manner; communicating a threat through any person to Caywood; engaging in conduct directed specifically toward Caywood, including following Caywood, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass Caywood; and going near her residence or place of employment. *See* TEX. FAM.CODE ANN. §§ 81.001, 85.022(b)(5) (Vernon Supp. 2002).

On May 5, 1999, appellant was indicted under penal code sections 25.07(a)(1) and (g) and 42.072(a)(1)(A) for violating the protective order on more than one occasion by stalking Caywood on April 6, 1999. Section 25.07(a)(1) provides that a person commits an offense if, in violation of an order issued under chapter 85 of the family code, the person knowingly or intentionally commits an act in furtherance of an offense under penal code section 42.072. TEX. PENAL CODE ANN. §§ 25.07(a)(1), (g), 42.072(a)(1)(A) (Vernon Supp.2002).

Section 42.072(a)(1)(A) provides that a person commits the offense of stalking if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in con-

duct, including following the other person, that the actor knows or reasonably believes the other person will regard as threatening bodily injury or death to the other person. *Id.* § 42.072(a)(1)(A).

An offense committed under section 25.07 is a third-degree felony if the defendant has violated the protective order by committing the offense of stalking. *Id.* § 25.07(g).

The trial court found appellant guilty under section 25.07(g) and assessed his punishment at eight years' confinement in the Texas Department of Criminal Justice.[1]

## SUFFICIENCY OF THE EVIDENCE

In his second and third points on appeal, appellant contends the evidence is legally and factually insufficient to support his conviction. Specifically, appellant asserts the State failed to prove he "followed" Caywood or that he knew or reasonably believed that Caywood would regard such conduct as threatening bodily injury or death, or that his conduct was reasonably likely to harass, annoy, abuse, torment, or embarrass Caywood, a protected individual.

**THE INDICTMENT**

■ The indictment alleged that appellant violated the terms of the March 8, 1999 protective order:

on more than one occasion and pursuant to the same scheme or course of conduct, intentionally engaged in conduct directed specifically toward Beth E. Caywood to wit: following Beth E. Cay-

wood knowing or reasonably believing that Beth E. Caywood would regard such conduct as threatening her bodily injury or death *and such conduct was reasonably likely to harass, annoy, abuse, torment, or embarrass Beth E. Caywood, a protected individual.* [Emphasis supplied.]

The emphasized language appears to track the former stalking statute, section 42.071(a)(1), which was repealed effective January 28, 1997.[2]

■ We measure sufficiency of the evidence of the elements of the offense as defined by a hypothetically correct jury charge, as authorized by the indictment. *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim.App.1997). This standard can uniformly be applied to all trials, whether to the bench or to the jury. *Id.* Allegations giving rise to immaterial variances may be disregarded in the hypothetically correct charge. *Gollihar v. State,* 46 S.W.3d 243, 257 (Tex.Crim.App.2001). We hold the emphasized language in the indictment to be an immaterial variance to separate independent clauses and we disregard it in our review of the sufficiency of the evidence in this case. *See id.* Thus, we will not consider appellant's challenge that the evidence is legally and factually insufficient to show that his conduct was reasonably likely to harass, annoy, abuse, torment, or embarrass Caywood.

**LEGAL SUFFICIENCY STANDARD OF REVIEW**

■ In reviewing the legal sufficiency of the evidence to support a conviction, we

---

1. Appellant was also found guilty on counts two, three, and four, which alleged the state jail felonies of tampering with a witness, Beth Caywood, in an effort to get Caywood to agree to abstain from the prosecution of appellant in three cases alleging violations of a prior protective order. Appellant has not appealed from these three convictions.

2. *See* Act of May 19, 1995, 74th Leg., R.S., ch. 657, 1995 Tex. Gen. Laws 3625, *repealed by,* Act of Jan. 27, 1997, 75th Leg., R.S., ch. 1, § 10, 1997 Tex. Gen. Laws 1, 3 (current version at TEX. PENAL CODE ANN. § 42.072(a) (Vernon Supp.2002)). Appellant did not move to quash the indictment, nor does he complain on appeal of the inclusion of the emphasized language in the indictment.

view all the evidence in the light most favorable to the judgment. *Cardenas v. State,* 30 S.W.3d 384, 389–90 (Tex.Crim. App.2000); *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State,* 939 S.W.2d 607, 614 (Tex.Crim.App.), *cert. denied,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

## FACTUAL SUFFICIENCY STANDARD OF REVIEW

■■■■ In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim.App.2000); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Evidence is factually insufficient if it is so weak as to be clearly wrong and manifestly unjust or the adverse finding is against the great weight and preponderance of the available evidence. *Johnson,* 23 S.W.3d at 11. Therefore, we must determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the judgment, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.* In performing this review, we are to give due deference to the fact finder's determinations. *Id.* at 8–9; *Clewis,* 922 S.W.2d at 136. Consequently, we may find the evi-

dence factually insufficient only where necessary to prevent manifest injustice. *Johnson,* 23 S.W.3d at 9; *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997).

## BACKGROUND FACTS

The testimony at trial established that the relationship between appellant and Caywood was at times confusing, confrontational, and tumultuous. They met in March of 1997 and were married four months later. Caywood's three children from her prior marriage, ages six, nine, and twelve, lived with them. Caywood testified that appellant was "very abusive" and on numerous occasions would lock Caywood and her children out of the house so they had to sleep in the car and relieve themselves in the front yard. During their marriage, appellant threw cigarettes at Caywood, burned her, dragged her across the carpet, tried to suffocate her, and poked her until she bled.

Caywood and her children moved out of the house on January 24, 1998 and lived with her ex-mother-in-law, Ann Sluder. The next day, Caywood applied for a family violence protective order against appellant; the order was signed on February 11, 1998. Sluder testified that even though the protective order had been signed, appellant would still call Sluder's house looking for Caywood ten or fifteen times a night, or all day long. Sluder feared for Caywood because she had seen the marks where appellant had dragged her across the floor and where he had bruised her hand.

On January 26, 1998, Caywood filed for divorce, which became final on June 10, 1998. After that time, Caywood complained to the police on ten or fifteen occasions that appellant had violated the protective order by harassing her on the job, constantly telephoning her, and break-

ing into her apartment on several occasions. As a result, five criminal complaints were filed against appellant.

Caywood acknowledged that she eventually started sleeping with appellant on numerous occasions, and on September 22, 1998, Caywood went back to court and asked that the protective order be modified so that appellant could reside with her. The modified protective order continued to prohibit appellant from committing family violence or directly communicating with Caywood in a threatening or harassing manner; the protective order expired by its own terms on February 10, 1999.

On January 12, 1999, Caywood signed affidavits of nonprosecution regarding three of her complaints against appellant. Caywood testified at trial that appellant had called her fifty or sixty times a day at work, and on hundreds of occasions he had asked her to drop the charges against him. Caywood thought if she signed the affidavits of nonprosecution, appellant would cease constantly calling her at work and she would not lose her job. However, even after she signed the affidavits, appellant still followed her everywhere she went, and on March 8, 1999 Caywood requested the third and final protective order. This is the protective order that the indictment alleges appellant violated. Appellant continued to follow Caywood and to harass her to drop an assault charge pending against him.

On April 5, 1999, Caywood felt things were "coming to a head. I felt it—I felt the pressure. Something was about to happen." She believed appellant was going to hurt her or her children so she went to see Chief of Police Randy Jaquess to voice her concern that the police were unable to protect her. Chief Jaquess said Caywood was specifically concerned about appellant following her everywhere she would go and that Caywood "felt she was

in danger from that since he knew her activities and where she was and always appeared." Chief Jaquess testified that Caywood was worried that, if appellant knew where she was constantly, there might be some danger factor involved. After Caywood complained to Chief Jaquess that she was getting inadequate police protection for protective order violations, he personally talked with appellant about his emails, telephone calls, letters to Caywood, and the fact that he was following Caywood, all in violation of the protective order. Appellant assured him he was not and would not be violating the protective order.

Caywood returned to see Chief Jaquess the next day, April 6, 1999, to tell him that appellant had contacted her the day before by telephone, pager, and email. As she left the police station, the police went with her to see if appellant was waiting for her in the parking lot. They observed appellant in his car in an adjoining parking lot. Appellant was stopped by the police because Chief Jaquess said he "had a very strong feeling for the safety of Beth Caywood." At the time he was stopped, appellant had a scanner that was operating and was tuned into the frequencies the police department uses. There was a pair of binoculars on the passenger's side of the car. Appellant was cooperative and was arrested for violating the protective order.

Appellant testified that he was in the vicinity of Caywood on April 5, 1999 in order to pay a fine at Municipal Court. He saw Caywood's car at the police station and she gave him the finger and turned around and walked back into the police station. Appellant explained that he was in the same area again on April 6, 1999 because he was going to stop in and see his probation officer without an appointment. He denied following Caywood on that occasion or at any other time. He

insisted that Caywood called and emailed him as many times as he may have contacted her.

DISCUSSION

■ Appellant contends the record does not support the allegation that he "followed" Caywood, in violation of the protective order. Appellant concedes that his testimony is in direct conflict with Caywood's assertion that he followed her to the police station on April 6, 1999.

Having reviewed the testimony, we find numerous references in the record indicating that appellant followed Caywood constantly, including on April 5 and 6 when she went to the police station. Accordingly, we hold the evidence is sufficient to establish that appellant on more than one occasion and pursuant to the same scheme or course of conduct intentionally followed Caywood.

■ Appellant asserts the evidence does not prove that appellant knew or reasonably believed that Caywood would regard such conduct as threatening her bodily injury or death. Appellant distinguishes the facts of the case from those of *Clements v. State*, 19 S.W.3d 442 (Tex. App.-Houston [1st Dist.] 2000, no pet.), a stalking case in which the complainant testified that appellant saw her become hysterical and cry and shake when he yelled at her, and the court upheld the conviction. *Id.* at 448–49. Appellant argues there is no such evidence in the instant case.

Caywood testified that appellant frequently physically abused her while she was living with him. Sluder testified that after Caywood had moved out of appellant's home and was living with her, appellant would call her house ten or fifteen times a night and that Sluder feared for Caywood because Sluder had seen the marks and bruises on Caywood that had been caused by appellant. From February 1998 until appellant was arrested on April 6, 1999, Caywood constantly complained to the police about appellant harassing her, assaulting her, and breaking into her apartment on several occasions. On April 5, 1999, she thought things were coming to a head, so she went to see Chief Jaquess because she felt she was in danger since appellant followed her everywhere. Chief Jaquess stopped appellant's car on April 6, 1999 because he had a very strong feeling for Caywood's safety.

Considering the pattern of abusive behavior appellant exhibited toward Caywood during their marriage and his obsessive behavior for more than a year afterward, combined with his awareness of Caywood's actions in securing three protective orders to protect herself from him and the fact that she filed numerous complaints with the police, we hold there was sufficient evidence that appellant knew or reasonably believed that Caywood would regard his conduct in following her as threatening her bodily injury.

We conclude a rational fact finder could have found beyond a reasonable doubt all the essential elements of the crime of violation of a protective order by committing the offense of stalking. Accordingly, we hold the evidence is legally and factually sufficient to support the judgment. Appellant's second and third points are overruled.

## CONSTITUTIONALITY OF STATUTE

■ In his first point, appellant contends section 42.072 is impermissibly vague on its face and unconstitutional as applied to his conduct because he could not know that the conduct he engaged in on April 6, 1999 would be unlawful conduct or that this particular conduct would subject him to criminal prosecution for a felony offense.

■■■■ To preserve for appellate review an attack on the constitutionality of a statute as applied to him, appellant must have first raised the issue in the trial court. *Curry v. State,* 910 S.W.2d 490, 496 (Tex.Crim.App.1995); *Garcia v. State,* 887 S.W.2d 846, 861 (Tex.Crim.App.1994), *cert. denied,* 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995); *Battles v. State,* 45 S.W.3d 694, 702 (Tex.App.-Tyler 2001, no pet.); *Sullivan v. State,* 986 S.W.2d 708, 711 (Tex.App.-Dallas 1999, no pet.). The record reveals, and appellant concedes, that the issue of the unconstitutional vagueness of the stalking statute as applied to him was not raised in the trial court by objection or motion for new trial. Therefore, to the extent appellant challenges the validity of the stalking statute as applied to him, he has waived this issue. Appellant was not required, however, to raise in the trial court a constitutional challenge that the statute is facially invalid. *See Garcia,* 887 S.W.2d at 861. Therefore, we will address the issue of whether the stalking statute is impermissibly vague on its face because it does not specify the standard of conduct that is prohibited.

The stalking statute provides that

(a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct, including following the other person, that:

(1) the actor knows or reasonably believes the other person will regard as threatening:

(A) bodily injury or death for the other person[.]

Tex. Penal Code Ann. § 42.072(a)(1)(A).

■■■■ When reviewing the constitutionality of a statute, we presume the statute is valid and that the Legislature has not acted unreasonably or arbitrarily in enacting it. *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim.App.1978). The burden rests on the party challenging the statute to establish its unconstitutionality. *Id.* We uphold the statute if we can determine a reasonable construction that will render it constitutional and carry out the legislative intent. *Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App. [Panel Op.] 1979).

■■■■ To pass a vagueness challenge, a criminal statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *Grayned v. Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *Long v. State,* 931 S.W.2d 285, 287 (Tex. Crim.App.1996). Further, the law must establish determinate guidelines for law enforcement. *Long,* 931 S.W.2d at 287. Where First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. *Id.*

■■■■ A statute is not rendered unconstitutionally vague merely because words or terms are not specifically defined. *Engelking v. State,* 750 S.W.2d 213, 215 (Tex.Crim.App.1988); *Ahearn v. State,* 588 S.W.2d 327, 338 (Tex.Crim.App. [Panel Op.] 1979). Two courts of appeals have recently addressed the facial constitutionality of the current version of section 42.072 and both have held the statute is not unconstitutionally vague. *See Battles,* 45 S.W.3d at 702–03; *Clements,* 19 S.W.3d at 450–51. After reviewing this statute, we conclude it thoroughly specifies what conduct is prohibited and subject to prosecution. Section 42.072(a)(1)(A) gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited and it establishes determinate guidelines for law enforcement. Therefore, we

agree with our sister courts that the language of the current stalking statute is not unconstitutionally vague. Appellant's first point is overruled.

## CONCLUSION

Having overruled all of appellant's points on appeal, we affirm the judgment of the trial court.