Opinion filed February 29,
2012

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00065-CR

                                                    __________

 

                             BERNELL
DEON MCCLAY, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 35th District Court

 

                                                           Brown
County, Texas

 

                                                   Trial
Court Cause No. CR19970

 



 

M
E M O R A N D U M   O P I N I O N

            The
jury convicted Appellant, Bernell Deon McClay, of the third-degree felony
offense of stalking.  See former Tex.
Penal Code § 42.072 (2001).[1] 
After finding an enhancement paragraph to be true, the trial court assessed Appellant’s
punishment at confinement for sixty years and sentenced him accordingly.  We reverse
and remand.

            Appellant
raises four issues in which he challenges his conviction for the felony offense
of stalking.  In his first issue, Appellant claims that the trial court erred
when it misstated the law regarding the stalking statute in the introductory paragraph
and in the application paragraph of the jury charge.  Appellant’s argument is
centered on the fact that the trial court charged the jury in the disjunctive
by using the word “or” instead of in the conjunctive by using the word “and.”  In
his remaining three issues, Appellant attacks the legal sufficiency of the
evidence.  

Background
Facts

            Appellant
and the victim, Tamara Mims, had a romantic relationship that began when they
were both living in Mathis, Texas, in 2008.  They lived together in Mathis
until Mims moved to Brownwood in July 2008.  After a brief interval during which
there was no romantic relationship, Appellant followed Mims to Brownwood and
moved into her home there in August 2008.  The relationship was described as a
volatile one.  Mims testified that Appellant was controlling, wanting to know
where she was at all times.  On November 19, 2008, the two had an argument that
progressed into a physical altercation when Appellant struck Mims on her face
several times.  Appellant trapped Mims in the bathroom of her home and refused
to let her out unless she swore on the lives of her children that she would not
tell the police that he had struck her.  After a friend picked her up from the
home, Mims called the police.  An officer photographed the bruises on her face. 
When Mims came back to her home later that day, Appellant was there but ran
away when Mims told her friend to “[c]all the cops.”  The police were called to
the residence, and while they were there, Appellant called on Mims’s phone.  The
police answered the phone and gave Appellant a verbal warning not to come back. 
It was agreed that Appellant’s belongings would be packed up and placed at the
curb.

            Appellant
continued to phone Mims throughout the day.  That night, Appellant came back to
the house, walked in through the back door uninvited, and began rummaging
through Mims’s things.  The police again came to the house, and Appellant fled. 
Appellant again called Mims, and again the police answered the call.  Appellant
told the police that he wanted his Lone Star card.  The officer told Appellant
that he (the officer) had the card and that Appellant could come get it from
him; Appellant declined.  The officer then confirmed that Appellant had no
reason to come back to the residence.

            Appellant
continued to call Mims that day.  The back door of the home was broken, and
appellant could “just come in whenever.”  The next morning, Appellant again came
to Mims’s home.  Mims did not phone the police because Appellant “left with no
problems” after a brief time.  After dinner that same night, Mims’s son was
taking out the trash and saw Appellant outside their home; Appellant was “standing
in the window watching.”  Appellant followed Mims’s son into the home and told
them that he had been watching Mims in her bedroom and also had been watching
the family eat dinner.  The children went into the bedroom and phoned the
police.  Appellant again fled the scene and was gone by the time the police, yet
again, arrived at the home.

            Appellant
came back again later that night.  He entered the home through the back door
and demanded to know who Mims was talking to on the phone.  When Mims told the
person to whom she was talking to call the police, Appellant ran out the back
door.  Between November 19 and November 21, Appellant continuously called Mims’s
place of employment and her home.  Each time he demanded to know the name of
the person to whom she was talking.  The police told Appellant and the owner of
the phone Appellant was using to stop calling.  Mims pleaded with Appellant and
promised not to press charges if he would leave her and her children alone.

            Despite
all of the warnings and the plea from Mims, the record reflects that Appellant
came back to the home again the next morning, November 21, 2008.  Once again
the police were called. Once again Appellant fled before they arrived.  Once
again Appellant returned.  That night, he came back and became angry when he
saw Mims sitting at the computer; he began acting “scary.”  Appellant looked at
the computer and said, “I knew you were on the computer talking to guys.”  He
began going through the computer, reading everything he could find.  He picked
up the computer and threw it to the ground, smashing it into pieces.  He picked
up a trash can and tried to throw it through the kitchen window twice.  The
window did not break, but trash was strewn about the home in the process.  He
picked up a kitchen chair and threw it into the living room where Mims and her four
children were standing.  The children were scared and crying, and Mims
testified that she feared bodily injury to her person.  When Appellant heard
Mims’s son on the phone with police, once again he fled.  The police came to
the scene and photographed the damage that Appellant had done to the home.  Appellant
was apprehended by police after they had chased him.  A grand jury subsequently
indicted Appellant for stalking Mims.

Sufficiency
of the Evidence

            A.
Standard of Review.

            When
reviewing the sufficiency of the evidence, we view all of the evidence in the
light most favorable to the verdict to determine whether the jury was
rationally justified in finding guilt beyond a reasonable doubt.  Brooks v.
State, 323 S.W.3d 893, 898 (Tex. Crim. App. 2010). This court does not sit
as a thirteenth juror and may not substitute its judgment for that of the
factfinder by reevaluating the weight and credibility of the evidence.  Id.
at 901; Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); see
also Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (stating
the jury may choose to believe or disbelieve any portion of the testimony a
trial). We defer to the factfinder’s resolution of conflicting evidence unless
the resolution is not rational.  Brooks, 323 S.W.3d at 902 n.19, 905.  Our
duty as a reviewing court is to ensure that the evidence presented actually
supports a conclusion that the defendant committed the crime.  Williams v.
State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

            B.
Applicable Law.

            In
order to obtain a conviction, the State was required to prove that Appellant
(1) on more than one occasion and pursuant to the same scheme or course of
conduct directed specifically at Mims, (2) knowingly engaged in conduct, (3)
that he knew or reasonably believed Mims would regard as threatening bodily
injury or death to her, (4) that caused Mims to be placed in fear of bodily
injury or death, and (5) that would cause a reasonable person to fear bodily
injury or death for himself or herself.  Former Section 42.072(a).

            C.
Sufficiency Analysis.

            We
will first discuss Appellant’s second issue on appeal.  In his second issue, Appellant
argues that the evidence was insufficient to prove beyond a reasonable doubt
that Appellant engaged in conduct directed specifically toward Mims on November
21, 2008, that Appellant knew or reasonably believed Mims would regard as
threatening bodily injury to her. 

            A
person acts knowingly, or with knowledge, with respect to the nature of his conduct
or to circumstances surrounding his conduct when he is aware of the nature of
his conduct or that the circumstances exist.  Tex.
Penal Code Ann. § 6.03(b) (West 2011).  A person acts knowingly, or with
knowledge, with respect to a result of his conduct when he is aware that his
conduct is reasonably certain to cause the result.  Id.  Proof of a
culpable mental state almost invariably depends upon circumstantial evidence
and may be inferred from any facts tending to prove its existence, including
the acts, words, and conduct of the accused.  Hart v. State, 89 S.W.3d
61, 64 (Tex. Crim. App. 2002). 

            Here,
the jury heard evidence of a physical assault that occurred on the morning of
November 19, 2008, and of a constant barrage of verbal harassment that occurred
in the days that followed, culminating in the events on November 21, 2008.  There
was evidence that on November 19, 2008, the police warned Appellant not to come
back to the home.  The jury also heard testimony that Mims called the police
numerous times during the two-day interval when Appellant was at her home and
would not leave.  Each time Appellant heard that police were on the way, he
fled.  The evidence showed that, even though he left the residence when police were
summoned, Appellant kept up a stream of harassing phone calls.  After the final
confrontation on November 21, 2008, Appellant led police on a foot chase.  He
continued running even after being tased and resisted arrest until a “pressure
point” technique was applied to gain his compliance.

            These
facts would allow a rational jury to infer that Appellant knew or reasonably
believed Mims would regard his conduct as threatening bodily injury or death.  Allen
v. State, 218 S.W.3d 905, 909 (Tex. App.—Beaumont 2007, no pet.) (holding
that a jury could rationally conclude defendant’s “behavior, which persisted after a police officer warned him to stop, revealed a
subjective awareness that his actions had placed the complainant in fear of bodily
injury”); see also Sisk v. State, 74 S.W.3d 893, 900 (Tex. App.—Fort
Worth 2002, no pet.) (finding sufficient evidence to conclude the defendant
knew or reasonably believed his conduct would threaten the complainant with
bodily harm or death when the defendant exhibited toward the complainant a pattern
of abusive and obsessive behavior, combined with his awareness of the
complainant’s actions in securing police intervention). 

            Appellant
contends that, when he threw the trash can, computer, and chair, “none of these
actions were necessarily directed toward the alleged victim.”  We must assume
the jury disagreed.  It is the responsibility of the jury to draw its own
reasonable inferences.  Jackson v. Virginia, 443 U.S. 307 (1979). That Appellant’s
actions on November 21, 2008, were directed at Mims was a reasonable inference. 
Appellant’s second issue is overruled.

            Appellant
argues in his third issue that the evidence was insufficient to prove that his
conduct on November 21, 2008, would cause a reasonable person to fear bodily
injury. He argues in his fourth issue that the evidence was insufficient to
prove that Appellant’s conduct on November 21, 2008, caused Mims to fear bodily
injury for herself.

            The
course of conduct between the one issuing the threats and the victim is
important to understanding whether there is sufficient evidence of a threat.  See
Olivas v. State, 203 S.W.3d 341, 349–50 (Tex. Crim. App. 2006).  The jury reasonably
could have interpreted Appellant’s nonverbal behavior, including throwing
furniture toward Mims and her four small children, as conduct that would cause
a reasonable person to fear bodily injury and did cause Mims to fear as much. The
jury heard testimony from Mims that she feared Appellant would cause bodily
injury to her.  The jury is the sole judge of the credibility of the witnesses and
may choose to believe some, all, or none of a witness’s testimony.  Sharp,
707 S.W.2d at 614.  Considering the pattern of behavior Appellant exhibited,
such as physically assaulting Mims, making harassing phone calls, appearing numerous
times at her home, breaking her personal property, and throwing a chair toward
Mims and her children, we find a reasonable person would have been placed in fear
of bodily injury or death.  We conclude a rational factfinder could have found
all the essential elements of the crime of stalking beyond a reasonable doubt.
As such, we find the evidence to be legally sufficient to support Appellant’s
conviction for stalking.  Appellant’s third and fourth issues are overruled. 

Jury
Charge Error

            A.
The Error.

             In
his first issue, Appellant claims that the trial court erred when it misstated
the law regarding the stalking statute in the introductory paragraph and in the
application paragraph of the jury charge.  As we have said, Appellant’s
argument is centered on the fact that the trial court charged the jury in the
disjunctive by using the word “or” instead of in the conjunctive by using the
word “and.”  Our first duty in analyzing a jury charge issue is to decide
whether error exists.  Ngo v. State, 175 S.W.3d 738, 743 (Tex. Crim.
App. 2005). 

            The
stalking statute provided in pertinent part as follows:

            (a) A
person commits an offense if the person, on more than one occasion and pursuant
to the same scheme or course of conduct that is directed specifically at
another person, knowingly engages in conduct, including following the other
person, that:

 

            (1) the
actor knows or reasonably believes the other person will regard as threatening:

 

            (A)
bodily injury or death for the other person;

 

            . . . .

 

            (2)
causes the other person . . . to be placed in fear of bodily injury or death .
. . ; and

            (3)
would cause a reasonable person to fear:

 

            (A)
bodily injury or death for himself or herself.

 

Former Section
42.072 (emphasis added). 

            Subsections
(1), (2), and (3) of former Section 42.072(a) are each elements of a single
offense; the three clauses are equal elements that together define one offense.
 Ploeger v. State, 189 S.W.3d 799, 804–07 (Tex. App.—Houston [1st Dist.]
2006, no pet.) (analyzing the grammatical structure, meaning, and legislative
intent of former Section 42.072). Here, in the jury charge, the trial court
used the term “or” rather than “and” between each subsection, implying that (1),
or (2), or (3) could each independently constitute the offense of stalking.  Each
subsection should, instead, have been charged as necessary elements of the
single offense of stalking.  This constituted error because, in so charging the
jury, the trial court allowed the jury to find Appellant guilty upon finding
fewer than all of the elements of the offense of stalking.  See id.  The
State must prove every element of the offense beyond a reasonable doubt. Brooks,
323 S.W.3d at 895.  However, Appellant concedes that his trial attorney did not
object to the charge.  When the defendant fails to object or states that he has
no objection to the charge, we will not reverse for jury charge error unless
the record shows “egregious harm” to the defendant.  Ngo, 175 S.W.3d at
744 (citing Almanza v. State, 686 S.W.2d 157,
171 (Tex. Crim. App. 1985)). 

            B.
Egregious Harm Analysis.  

            Egregious
harm occurs when the error “affects ‘the very basis of the case,’ deprives the
defendant of a ‘valuable right,’ or ‘vitally affect[s] a defensive theory.’” Olivas
v. State, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006) (quoting Hutch v.
State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996), and Almanza, 686
S.W.2d at 172).  Egregious harm is a difficult standard to prove and must be
determined on a case-by-case basis. Ellison v. State, 86 S.W.3d 226, 227
(Tex. Crim. App. 2002).  To determine whether a defendant has sustained
egregious harm, we may consider (1) the entire charge; (2) the state of the
evidence, including contested issues; (3) arguments of counsel; and (4) any
other relevant information. Hutch, 922 S.W.2d at171.          

            Here,
the jury was allowed to choose among the subsections of former Section 42.072(a)
as potential bases for its verdict, rather than requiring that it find that all
three subsections were proved beyond a reasonable doubt.  The law was misstated
in the introduction and in the application and was not correctly stated
anywhere within the charge.  This allowed the jury to find Appellant guilty
without finding that each element of the offense had been proved by the State
beyond a reasonable doubt.  The charge made optional the statute’s requirement
that the jury determine whether, in light of the evidence, Mims’s fear was
reasonable.  The application of an objective “reasonable-person” standard is crucial
to the constitutionality of the stalking statute.  See Ploeger, 189
S.W.3d at 806 (citing Clements v. State, 19 S.W.3d 442, 451 (Tex.
App.—Houston [1st Dist.] 2000, no pet.)) (discussing legislative addition of
reasonable-person standard to cure “vagueness deficiency”).  Finally, the
wording of the application paragraph does not make it clear that the mens
rea requirement applies to each element of the offense.  As written in the
charge, it could appear to some readers that a conviction can be had if a
victim merely perceives fear of bodily injury, regardless of the actor’s
knowledge or reasonable belief that the other person
will regard his conduct as threatening.  The error thus impacted
“valuable rights” that go to the “very basis of the case.”  See Sanchez v.
State, 209 S.W.3d 117, 125 (Tex. Crim. App. 2006) (holding that the
defendant was deprived of a valuable right when the jury was not required to
determine every element of the alleged offense, including culpable mental state).


            The arguments
of counsel only compounded the charge error.  In its closing argument, the
State emphasized the use of “or” in the charge when it urged the jury that “you
will have all of those different ways to prove something.  Remember those are
‘ors.’”  The State continued, “[I]t’s either a reasonable person would have
feared the conduct the way he was acting or she did fear it.  So, it’s either
one.  So, those ‘ors’ are there for that reason.”   Appellate courts have found
egregious harm based in part on prosecutor statements that exacerbate the harm
done by a jury charge error.  Ngo, 175 S.W.3d at 750–52 (Prosecutor
repeatedly emphasized that jury need not be unanimous in selecting among
multiple offenses submitted in the disjunctive.); London v. State, 325 S.W.
3d 197, 208–09 (Tex. App.—Dallas 2008, pet. ref’d) (In closing argument, the
State drew the jury’s attention to the language in the charge.); Hines v.
State, 269 S.W.3d 209, 221 (Tex. App.—Texarkana 2008, pet. ref’d, untimely
filed; pet. ref’d [2 pets.]) (State “emphasiz[ed] the very point which was in
error [and] exponentially magnified the error contained in the charge and
converted it from theoretical harm to actual harm.”).  The prosecutor’s
statements in his closing argument exacerbated the error in the jury charge.

            The
record reveals no other relevant information that would ameliorate the error.  The
weight of the evidence, though considerable, cannot overcome the harm done.  We
sustain Appellant’s first issue on appeal.

            The
judgment of the trial court is reversed, and this cause is remanded for a new
trial.

 

 

                                                                                    ERIC
KALENAK

                                                                                    JUSTICE

 

February 29, 2012

Do not publish.  See TEX. R. APP. P. 47.2(b). 

Panel consists of: Wright,
C.J., 

McCall, J., and Kalenak, J.

 









                [1]We
note that Section 42.072 has since been amended and that the amendments, which
took effect September 1, 2011, do not apply to this case because the offense
took place in 2008.