Nathan Brian CLEMENTS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–99–00293–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 24, 2000.

Stephen A. Doggett, Richmond, Cullen H. Landis, Houston, for Appellant.

John F. Healey, Jr., Dist. Atty., Mark Harold Hanna, Asst. Dist. Atty., Richmond, for State.

Panel consists of Chief Justice SCHNEIDER and Justices ANDELL and DUGGAN.[*]

## OPINION

MICHAEL H. SCHNEIDER, Chief Justice.

After a trial before the court, the trial judge sentenced appellant to 12 months probation for stalking. Appellant contends (1) the evidence is legally and factually insufficient to support his conviction for stalking, (2) the stalking statute is unconstitutional, (3) the trial court erred in admitting evidence about events occurring before the effective date of the stalking statute, and (4) the trial court erred in admitting evidence about events occurring on dates other than the date of the offense alleged in the information. We affirm.

### *Factual Background*

Nathan and Jennifer Clements were married in September 1995, after a six-year courtship. Both were active members of the Christadelphian Church throughout their relationship.

During the summer of 1996, Jennifer claims Nathan became possessive and controlling. Although he knew they frightened Jennifer, Nathan purchased guns and often left the guns on Jennifer's pillow. Nathan also scratched the name of one of Jennifer's male friends onto a bullet and told Jennifer that she could either give the bullet to her friend herself or Nathan would give it to him from the barrel of a gun. In November 1996, Nathan accused Jennifer of having affairs. Nathan stated that if he ever caught her with someone else, he would not hesitate to use one of his weapons.

[*] The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas

In December 1996, Nathan told Jennifer she had 10 minutes to decide whether she would quit her job or be thrown out of their apartment. Jennifer then packed her things and left.

Shortly after Jennifer left the apartment she began receiving phone calls from Nathan at her place of employment, Texas Instruments. From December 8, 1996, to January 1997, Jennifer received 26 phone messages from Nathan. Also during that time, Jennifer twice called Nathan to ask him to stop calling and harassing her. Jennifer testified that the telephone calls caused her to be in fear for her safety.

On December 18, 1996, Jennifer went to their apartment to retrieve her belongings. She hired a police officer to escort her because she was afraid for her safety. Although Nathan was not at the apartment, shortly after she left, Nathan left a message for Jennifer that he knew she brought a police officer with her to the apartment.

On December 19, 1996, Jennifer saw Nathan as she was leaving her new apartment. Nathan pulled next to her in his vehicle and began to honk his horn and yell at her. She drove to the Meadow Place police department because she was afraid Nathan would hurt her. At the police station, Nathan got out of his vehicle and began hitting Jennifer's window. Nathan could see Jennifer was in a hysterical state. Jennifer testified that she was afraid she would suffer bodily injury or death.

Because no one from the police station came out to offer assistance, Jennifer then drove to her place of employment because she knew there would be security personnel available. Nathan continued to follow Jennifer to Texas Instruments. Jennifer testified that Nathan was about an inch from her vehicle while she was driving and that he did not follow any traffic rules.

at Houston, participating by assignment.

Upon arriving at Texas Instruments, Nathan followed her around the parking lot at high rates of speed until Jennifer was able to contact a security officer.

Alice Wooten, a security officer at Texas Instruments, observed two vehicles traveling at high rates of speed in the Texas Instruments parking lot. When Wooten approached Jennifer she noticed Jennifer was crying, shaking, and appeared terrified. Jennifer told Wooten that her husband was following her. Nathan left Texas Instruments before Wooten could speak with him.

In January 1997, Nathan filed an answer to Jennifer's original petition for divorce. In his original answer to Jennifer's original petition for divorce, Nathan acknowledged Jennifer was in fear.[1] Nathan also stated only death or the return of Christ would end their marriage.

On February 18, 1997, Jennifer saw Nathan at the gym where they both had memberships. Although Nathan did not speak to Jennifer, he stared at her for 30 minutes while she did aerobics. Jennifer testified that his actions caused her to be afraid. About a week later, Jennifer once again saw Nathan at the gym. Nathan again watched Jennifer, and it caused her to be afraid. Jennifer testified that Nathan arrived at the gym after she did because when she left, Nathan's car was parked directly beside hers, although his car was not there when she arrived. Jennifer also testified that Nathan did not regularly attend the gym and did not workout while he was there.

In March 1997, Jennifer and a male friend saw Nathan drive by the front of her apartment as they were leaving. When Nathan saw Jennifer he stopped and began to yell at Jennifer and her friend. Jennifer testified that this behavior also caused her to fear bodily injury or death.

Jennifer next saw Nathan on April 4 1997, in the parking lot of her apartments. Nathan was running through the parking lot toward the swimming pool area of her apartments. Jennifer ran to her apartment and called the police because she was afraid Nathan would hurt her. Jennifer testified that this incident placed her in fear of bodily injury or death.

Throughout this time period Jennifer was aware that according to his faith, Nathan believed he would not be permitted to remarry until Jennifer died, even after they legally divorced. As a result of Nathan's actions, Jennifer requested that her employer transfer her to another location.[2] Nathan was convicted of stalking in March 1999.

### The Information

The information alleged the following:

NATHAN BRIAN CLEMENTS, hereafter styled the Defendant heretofore on or about APRIL 4, 1997, . . . did then and there

pursuant to the same scheme and course of conduct directed specifically at another person, to-wit: JENNIFER CLEMENTS, hereinafter referred to as complainant, knowingly engage in conduct, to-wit: following said complainant, and said defendant knew and reasonably believed said complainant regarded said conduct as threatening bodily injury and death for said complainant, and said conduct did cause said complainant to be placed in fear of bodily injury and death, and said conduct did cause a reasonable person to fear bodily injury and death for herself.

pursuant to the same scheme and course of conduct directed specifically at another person, to-wit: JENNIFER CLEMENTS, hereinafter referred to as com-

---

1. Nathan stated "Respondent feels Jennifer Clements' requests for extraordinary restraints on Respondent are based on her shame, confusion, speculation, conjecture and her mere fear and apprehension."

2. Jennifer was transferred to Italy, but has since returned to the United States.

plaintant, knowingly engage in conduct, to-wit: following said complainant, and said defendant knew and reasonably believed said complainant regarded said conduct as threatening bodily injury and death for said complainant, and said conduct did cause complainant to be placed in fear of bodily injury and death, and said conduct would cause a reasonable person to fear bodily injury and death for herself.

### The Stalking Statute

The current stalking statute, under which appellant was prosecuted, provides:

(a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct, including following the person, that:

(1) the actor knows or reasonably believes the other person will regard as threatening:

(A) bodily injury or death for the other person;

(B) bodily injury or death for a member of the other person's family or household; or

(C) that an offense will be committed against the other person's property;

(2) causes the other person or member of the other person's family or household to be placed in fear of bodily injury or death or fear that an offense will be committed against the other person's property; and

(3) would cause a reasonable person to fear:

(A) bodily injury or death for herself;

(B) bodily injury or death for a member of the person's family or household; or

(C) that an offense will be committed against the person's property.

TEX. PENAL CODE ANN. § 42.072 (Vernon Supp.1999). This statute became effective on January 23, 1997.

### Legal Sufficiency

■ In a legal sufficiency review, we examine the evidence in the light most favorable to the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We must determine whether a rational trier of fact could have found all essential elements of the crime beyond a reasonable doubt.

Appellant contends the evidence is legally insufficient for three reasons: (1) the information upon which the court proceeded to trial did not allege more than one occasion, (2) the trial court erroneously admitted and considered incidents that occurred on dates other than April 4, 1997, the date alleged in the information, and (3) even considering the evidence in a light most favorable to the prosecution, no rational trier of fact could have found Nathan guilty.

*More Than One Occasion*

■ First, Nathan argues that the information upon which the court proceeded to trial did not allege more than one occasion as required by the stalking statute. TEX. PENAL CODE ANN. § 42.072. However, any error in the charging instrument must be objected to prior to the date on which the trial on the merits commences. TEX. CODE CRIM. P. ANN. art. 1.14 (Vernon Supp. 1999).[3] Thus, because Nathan did not raise the defect in the information until after the State rested its case-in-chief, the

---

3. Article 1.14(b) provides that "[i]f the defendant does not object to a defect, error or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other post conviction proceeding." Therefore, article 1.14(b) prevents a defendant from being able to "lay behind the log" when a charging instrument is defective and then overturn the conviction on appeal. *Studer v. State,* 799 S.W.2d 263, 268 (Tex.Crim.App.1990).

issue is waived and he is precluded from raising it on appeal.

Additionally, the State provided evidence that Nathan committed the offense of stalking on a number of different dates, including February 18, 1997,[4] February 25, 1997,[5] March 29, 1997,[6] and April 4, 1997.[7] All of these dates are after the effective date of the statute.

*Dates Other Than April 4, 1997*

■ Secondly, Nathan contends the trial court erred in admitting and considering incidents that occurred prior to the date alleged in the information, April 4, 1997. We disagree. The State was required to prove Jennifer was placed in fear of bodily injury or death at the time of Nathan's conduct. TEX. PENAL CODE ANN. § 42.072. Therefore, the incidents that occurred prior to January 23, 1997, the effective date of the stalking statute, and April 4, 1997, the date alleged in the information, establish Jennifer's state of mind at the time of the offense. These events, did not, however, establish the elements of the stalking statute. Only the events that occurred after the effective date of the statute established the elements of the offense.

*The Evidence*

Finally, Nathan argues that, even considering the evidence in a light favorable to the prosecution, no rational trier of fact could have found appellant guilty where: (1) Jennifer said Nathan did not follow her, as alleged in the information, (2) there is no evidence Nathan ever threatened to injure or kill Jennifer, (3) there is no evidence Nathan ever harmed Jennifer, (4) there is no evidence Jennifer ever communicated to Nathan, or that Nathan should have known his actions were regarded by Jennifer as threatening, (5) there is no evidence Nathan ever knew Jennifer was present on April 4, 1997, (6) there is no

evidence that Nathan did anything to frighten Jennifer on April 4, 1997, and (7) there is no evidence Nathan's actions would cause a reasonable person to be placed in fear of injury or death.

*Jennifer Said Nathan Did Not Follow Her, as Alleged in the Information*

■ The current stalking statute does not define the term "follow," so we apply the plain meaning of the term. *Lane v. State*, 933 S.W.2d 504, 514 (Tex.Crim.App. 1996). We conclude that by repeatedly appearing at Jennifer's apartment when he did not reside there, and by causing himself to be where he knew Jennifer would be and engaging in conduct that he knew would cause Jennifer to be placed in fear, Nathan's conduct falls within the plain meaning of the term "follow."

*There is No Evidence Nathan Ever Harmed Jennifer*

■ The stalking statute does not require that Jennifer be harmed by Nathan.

*There is Legally Sufficient Evidence Jennifer Communicated to Nathan, and that Nathan Knew his Actions Were Regarded by Jennifer as Threatening*

■ On more than one occasion, Jennifer asked Nathan to stop harassing her. Additionally, in his response to Jennifer's petition for divorce, filed January 9, 1997, Nathan acknowledged Jennifer was in fear. Moreover, Nathan saw that Jennifer was hysterical, crying, and shaking after he followed her to the police department and to Texas Instruments. Finally, Nathan was aware that Jennifer hired a police officer to accompany her to remove her things from their apartment. This shows not only that Nathan should have known Jennifer regarded his actions as

---

**4.** Nathan watched Jennifer do aerobics for 30 minutes at the gym.

**5.** Nathan again watched Jennifer at the gym.

**6.** Nathan drove by Jennifer's apartment and yelled at her and a friend.

**7.** Nathan ran through Jennifer's apartment complex.

threatening, but that she communicated to him the threatening nature of his actions.

*There is Legally Sufficient Evidence Nathan Knew Jennifer was Present on April 4, 1997*

██ Jennifer testified that she observed Nathan running toward the swimming pool area next to her apartment on April 4, 1997. Because Nathan was running near the area in which her apartment was located, it is reasonable to assume he was aware that Jennifer was present and that he was trying to reach her.

*There is Legally Sufficient Evidence Nathan Frightened Jennifer on April 4, 1997*

██ Jennifer testified that she saw Nathan run across the parking lot toward the swimming pool area near her apartment on April 4, 1997, and that this caused her to be in fear of bodily injury or death. Jennifer called the police upon returning to her apartment.

Jennifer also testified that she had seen Nathan several other times at her apartment complex, and on at least one of those occasions he yelled at her. Jennifer testified that on those other occasions, Nathan saw her become hysterical and cry and shake. As such, there is legally sufficient evidence that Nathan frightened Jennifer on April 4, 1997.

*There is Legally Sufficient Evidence Nathan's Actions Would Cause A Reasonable Person to be Placed in Fear of Injury or Death*

██ Considering the pattern of behavior Nathan exhibited, such as leaving numerous phone messages for Jennifer, appearing several times at her apartment and other places where he knew she would be, and engaging in conduct that he knew would frighten her, we find a reasonable person would also have been placed in fear of bodily injury or death.

8. The former statute:

We conclude a rational fact finder could have found all the essential elements of the crime of stalking beyond a reasonable doubt. As such, we find the evidence to be legally sufficient to support Nathan's conviction for stalking.

We overrule point of error one.

### Factual Sufficiency

██ In a factual sufficiency review, we consider all the evidence giving deference to the fact finder's decision. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim. App.1996). We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

██ Nathan asserts the evidence is factually insufficient because he never threatened to harm Jennifer and never hurt her. He also contends there is no evidence Jennifer ever communicated to him that he frightened her. As such, Nathan argues there is no evidence that his actions caused Jennifer, or a reasonable person, to be in fear.

Having reviewed the entire record, we conclude Nathan's conviction for stalking is not contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. As such, we find the evidence to be factually sufficient to support Nathan's conviction.

We overrule point of error two.

### Constitutionality of Stalking Statute

In point of error three, Nathan contends the stalking statute is unconstitutional. Specifically, Nathan argues that the statute is unconstitutionally vague under the First Amendment and is overbroad and impinges upon protected speech and the marriage relationship.

In 1993, the Court of Criminal Appeals held the stalking statute in effect at that time was unconstitutionally vague on its face.[8] *Long v. State*, 931 S.W.2d 285, 287

The "stalking portion" of the 1993 harass-

(Tex.Crim.App.1996). Specifically, the court found the conduct requirement of the law was vague; the reasonable person standard could not be read into the statute; the report and threat requirements did not save the statute; and the statute could not be narrowly construed and legislative intent kept. *Id.* at 289–97. The court provided several possible solutions to the legislature in order to correct the problems. *Id.* at 289–97.

In 1997, with the *Long* decision in mind, the legislature enacted the stalking statute under which Nathan was convicted. TEX. PENAL CODE ANN. § 42.072. The legislature incorporated many of the suggestions made by the Court of Criminal Appeals in *Long v. State.* For example, the statute now contains a reasonable person standard. Additionally, the conduct provision, the language which the court found unconstitutionally vague, was stricken from the statute. Former TEX. PENAL CODE ANN. § 42.07(a)(7)(A) (Vernon 1994). Also, the 1997 statute requires the illegal conduct to be part of the same scheme or course of conduct, which satisfied the court's concern that there be a nexus between the threat and other, harassing conduct.

### Vagueness

■■■■ All laws carry a presumption of validity. *Ex parte Benavides,* 801 S.W.2d 535, 537 (Tex.App.—Houston [1st Dist.] 1990, writ dismissed w.o.j.). However, unless criminal laws are sufficiently clear, they are considered unconstitutionally vague. *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *Long,* 931 S.W.2d at 287–88. The party challenging a statute has the burden to establish its unconstitutionality. *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim.App.1978).

■■■■ To pass a vagueness challenge, a criminal statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *Grayned,* 408 U.S. at 108, 92 S.Ct. at 2298–99. Further, the law must establish guidelines for law enforcement. *Id.* Where First Amendment freedoms are implicated, the law must be sufficiently definite to avoid chilling protected expression. *Id.* If an act implicates First Amendment guarantees, the doctrine of vagueness demands a greater degree of specificity than in other contexts. *Id.* A criminal law may be held facially invalid even though it may not be unconstitutional as applied to a defendant's conduct. *Gooding v. Wilson,* 405 U.S. 518, 521, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972).

■■■■ The language of the 1997 statute is not unconstitutionally vague. We find this statute to thoroughly specify what conduct is prohibited and subject to prosecution. For example, one way in which a person can be convicted of stalking is by engaging in conduct he knows or reasonably believes will be regarded by the other person as threatening bodily injury or death. TEX. PENAL CODE ANN. § 42.072(a)(1)(A). It can also be an offense under the statute for a person to knowingly engage in conduct that would cause a reasonable person to fear bodily injury or death. TEX. PENAL CODE ANN. § 42.072(a)(3)(A). Therefore, the stalker is on notice of the prohibited conduct if he

---

ment statute provided:

(a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he: ...

(7)(A) on more than one occasion engages in conduct directed specifically toward the other person, including following that person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass that person;

(B) on at least one of those occasions by acts or words threatens to inflict bodily injury on that person or to commit an offense against that person, a member of that person's family, or that person's property; and

(C) on at least one of those occasions engages in the conduct after the person toward whom the conduct is specifically directed has reported to a law enforcement agency the conduct described by this subdivision.

Former TEX. PENAL CODE ANN. § 42.07 (Vernon 1994).

knows or believes the other person will regard that conduct as threatening bodily injury or death. As such, the previous vagueness problem no longer exists.

*Overbreadth*

 A statute, even if clear and precise, is overbroad if in its reach it prohibits constitutionally protected conduct. *Grayned,* 408 U.S. at 114, 92 S.Ct. at 2302; *Rahmani v. State,* 748 S.W.2d 618, 621 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). The broad statement of law, however, is tempered by the following two corollaries: (1) for a facial overbreadth challenge to succeed, the enactment must reach a substantial amount of protected conduct; and (2) even protected speech may be regulated to some degree by the State. *Rahmani,* 748 S.W.2d at 621.

 Nathan argues the current stalking statute prohibits his constitutionally protected conduct of attempting to "save" his marriage. We disagree. The current stalking statute specifically prohibits conduct, such as conduct that causes another person to be placed in fear of bodily injury or death. *Id.* "While conduct does not lose First Amendment protection merely because the actor intends to annoy the recipient, such conduct is much less likely to enjoy protection where the actor intends to place the recipient in fear of death or bodily injury. If the First Amendment can be removed from the arena, a stalking statute can be evaluated under more deferential due process standards, and is thus more likely to survive scrutiny." *Long,* 931 S.W.2d at 293. Here, Nathan was not engaged in constitutionally protected conduct because his conduct placed Jennifer in fear of bodily injury or death.

The court also suggested that there should be a nexus between the two or more instances of conduct so that the stalker is not denied notice of what is prohibited. *Id.* The legislature addressed this concern by requiring that there be more than one isolated episode. Tex. Pe-

NAL Code Ann. § 42.072. Specifically, the statute requires that the conduct occur on more than one occasion and pursuant to the same scheme or course of conduct. *Id.*

The *Long* opinion also addresses the language in the 1993 statute "annoy" and "alarm." *Long,* 931 S.W.2d at 296. The *Long* court indicated that acts or speech that "annoys" and "alarms" another is often constitutionally protected. *Id.* The legislature removed the terms "annoy" and "alarm" and replaced them with conduct that causes the other person to be placed in fear of death or bodily injury, thus removing the vague language. Tex. Penal Code Ann. § 42.072.

We hold the current stalking statute to be constitutional.

We overrule point of error three.

### Events Occurring Before Effective Date of Statute

In point of error four, Nathan contends the trial court erred in admitting evidence regarding events that occurred before the effective date of the stalking statute. We disagree.

Here, the court did not abuse its discretion in admitting evidence regarding events occurring before the effective date of the stalking statute. The court was required to determine whether Jennifer was placed in fear of bodily injury or death based on Nathan's conduct. Events occurring before the effective date of the stalking statute were relevant because they established whether Jennifer feared bodily injury or death based on Nathan's pattern of behavior. These events, did not, however, establish the elements of the offense of stalking. Only the events after the effective date of the statute were used to establish the elements of the statute. As such, the trial court did not err in admitting evidence regarding events occurring before the effective date of the stalking statute.

We overrule point of error four.

### Events Occurring on Dates other than the Dates Alleged in the Information

In point of error five, Nathan contends the trial court erred in admitting evidence regarding events occurring on dates other than the dates alleged in the information. The events occurring prior to the date alleged in the information also allow a court to make a determination as to whether Jennifer was placed in fear of bodily injury or death. Therefore, the trial court did not abuse its discretion in admitting evidence regarding such events.

We overrule point of error five.

We affirm.