COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




JOSE RAUL SOTO,


 Appellant,


v.



THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00227-CR
 


Appeal from the


384th District Court 


of El Paso County, Texas 


(TC# 20040D04841) 



O P I N I O N


 Jose Raul Soto appeals his conviction for stalking. He was convicted by a jury, and
sentenced to 10 years imprisonment, probated for 10 years' of community supervision, and a fine
of $500. He raises two issues on appeal, claiming error in the submitted jury charge and error
based upon an ex parte conversation between the judge and the complaining witness.

 Attorney Theresa Caballero testified that she met Jose Raul Soto in 2001 in the law
library of the El Paso County Courthouse. Ms. Caballero testified that she assisted him with a
case at her office, exactly how is not clear from the record.

 In April or May of 2004, Ms. Caballero became aware Appellant was following her. 
Appellant waited for Ms. Caballero to go to the library, and would then approach her. On several
occasions, he would leave the library when Ms. Caballero departed, and was seen following her
in and around the courthouse. He repeatedly invited her out, despite her rejections, and he
became more aggressive as she continued to ignore him. He mailed numerous letters, two
wooden statues, and whispered in Ms. Caballero's ear that she "was going to be the mother of his
children." Appellant also grabbed Ms. Caballero by her hand and placed it on his cheek.

 On June 25, 2004, Ms. Caballero was attending a court of inquiry, and news video
footage covering the event showed Appellant opening the door while she was exiting the
courtroom. Ms. Caballero testified that Appellant afterwards brushed up against her. She
responded by elbowing him, and telling him to leave her alone. On June 29, 2004, sheriff
deputies were called to the library in response to a disturbance. Ms. Caballero reported to the
deputies that Appellant was following her and harassing her. Sergeant Raymond Hernandez told
Appellant to stay away from Ms. Caballero and that he was not to go into the law library. 
Appellant later met with Captain Ralph Mitchell of the El Paso Sheriff's Department about being
banned, and was allowed to return to the law library.

 Appellant was seen coming into the courthouse immediately after Ms. Caballero. 
Sergeant Hernandez escorted Appellant outside, and reminded him not to follow Ms. Caballero
because she was terrified of him. In late August 2004, Ms. Caballero was at a restaurant when
she noticed Appellant walking back and forth through the alley in front of the restaurant staring
at her. Appellant then entered the restaurant, sat at a table, and drank a beer while facing
Ms. Caballero for three hours. On September 9, 2004, Sergeant Hernandez arrested Appellant at
the bus stop in front of the courthouse.

 Appellant was convicted by a jury of stalking. See Tex.Pen.Code Ann. § 42.072
(Vernon 2003). Appellant raises two issues on appeal, claiming error in the submitted jury
charge and error based upon an ex parte conversation between the judge and the complaining
witness.

 In Issue One, Appellant alleges the trial court submitted an erroneous jury charge since it
allowed him to be convicted of stalking if he either followed or waited for the complaining
witness. There was no objection made to the jury charge at trial. Appellant argues that the court
did not properly apply the law with regard to the offense of stalking. Appellant contends that
"following" is an element of the offense, and the inclusion of "or waited for" allowed for a
conviction without the State proving beyond a reasonable doubt that he had committed all of the
elements of stalking.

 When jury charge error is raised, the first part of the analysis is to see if error is actually
present. Ngo v. State, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005); Almanza v. State, 686
S.W.2d 157, 171 (Tex.Crim.App. 1985)(Opin. on reh'g). If there is error, we must then look to
see if the error harmed the defendant. Ngo, 175 S.W.3d at 743. The level of harm is dependent
upon preservation of error. Id. When there is no objection to the error, as here, "egregious
harm" must be shown in the record. Id. at 743-44. Errors causing egregious harm are those that
impact "'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect
a defensive theory.'" Id. at 750, citing Hutch v. State, 922 S.W.2d 166, 171 (Tex.Crim.App.
1996).

 Here, the jury charge, in relevant part, stated:

 Now, if you believe from the evidence beyond a reasonable doubt that the
defendant, on or about the dates set out below, in the County of El Paso and State
of Texas, Jose Soto, did then and there, on more than one occasion and pursuant
to the same scheme or course of conduct knowingly engage in conduct directed
specifically toward Theresa Caballero, that said defendant knew or reasonably
believed the said complainant would regard as threatening and caused the said
complainant to be placed in fear of bodily injury or death, and would cause a
reasonable person to fear bodily injury or death for himself or herself, to wit: on
or about the 14th day of June, 2004, the defendant physically touched Theresa
Caballero; on or about the 16th day of June, 2004 the defendant followed or
waited for Theresa Caballero; on or about the 25th day of June, 2004, the
defendant followed or waited for Theresa Caballero; on or about the 29th day of
June, 2004, the defendant followed or waited for Theresa Caballero; on or about
the 27th day of August, 2004, the defendant followed or waited for Theresa
Caballero, then you will find the defendant guilty of the offense of stalking.
(Verdict Form B)


 The stalking statute provides:

 (a) A person commits an offense if the person, on more than one occasion and
pursuant to the same scheme or course of conduct that is directed specifically at
another person, knowingly engages in conduct, including following the other
person, that:


 (1) the actor knows or reasonably believes the other person will regard as
threatening:


 (A) bodily injury or death for the other person;


 (B) bodily injury or death for a member of the other person's
family or household; or


 (C) that an offense will be committed against the other person's
property;


 (2) causes the other person or a member of the other person's family or
household to be placed in fear of bodily injury or death or fear that an
offense will be committed against the other person's property; and


 (3) would cause a reasonable person to fear:


 (A) bodily injury or death for himself or herself;


 (B) bodily injury or death for a member of the person's family or 
household; or


 (C) that an offense will be committed against the person's
property.


Tex.Pen.Code Ann. § 42.072 (Vernon 2005)[Emphasis added].


 Statutory construction demands that we carry out the "collective" legislative intent or
purpose. Boykin v. State, 818 S.W.2d 782, 785 (Tex.Crim.App. 1991); State v. Sanchez, 135
S.W.3d 698, 699 (Tex.App.--Dallas 2003), aff'd, 138 S.W.3d 324 (Tex.Crim.App. 2004). "We
interpret a statute in accordance with the plain meaning of its language unless the language is
ambiguous or the plain meaning leads to absurd results." State v. Newsom, 64 S.W.3d 478, 479
(Tex.App.--El Paso 2001, no pet.), citing Jordan v. State, 36 S.W.3d 871, 873 (Tex.Crim.App.
2001). Established principles of statutory construction are used to determine plain meaning. 
Boykin, 818 S.W.2d at 785-86.

 Courts have held "following" is not unconstitutionally vague or overbroad; however,
courts have yet to determine whether "following the other person" is a required element of the
stalking statute. See, e.g., State v. Seibert, 156 S.W.3d 32, 37-8 (Tex.App.--Dallas 2004, no
pet.); Battles v. State, 45 S.W.3d 694, 702-03 (Tex.App.--Tyler 2001, no pet.); Clements v. State,
19 S.W.3d 442, 448-51 (Tex.App.--Houston [1st Dist.] 2000, no pet.). While "following" is not
defined, Texas Government Code Section 311.005(13) defines "includes and including" as
"terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does
not create a presumption that components not expressed are excluded." See Tex.Gov't Code
Ann. § 311.005(13)(Vernon 2005). Since "including" is defined as a term of enlargement and
not an exclusive numeration, the Legislature's intent shows "following the other person" is not a
requirement of stalking but rather an example of prohibited conduct. See id.; Tex.Pen.Code
Ann. § 42.072(a).

 Assuming "following" is a required element of the offense, the submitted jury charge
would still lack reversible error. Appellant went to places he knew the other person would be,
and engaged in conduct he knew would place the other person in fear. Clements, 19 S.W.3d at
448. Appellant waited at the courthouse and in alleyways to follow her, invaded her personal
space, made inappropriate comments, and grabbed her. Appellant's actions fall within the plain
meaning of the term "follow" under the stalking statute. Id.

 Since we find no error in the submitted jury charge, we do not address the harm. Abdnor
v. State, 871 S.W.2d 726, 731-32 (Tex.Crim.App. 1994). Issue One is overruled.

 In Issue Two, Appellant contends he was denied a fair trial because the judge participated
in an ex parte communication with the complaining witness, and allowed the witness to comment
about the impropriety on cross-examination, which biased the jury. During the trial, 
Ms. Caballero testified to having an ex parte conversation with the trial judge regarding the
questions asked throughout her cross-examination. In particular, Ms. Caballero was complaining
of questions regarding her school uniforms, travels, marriages, and relationship with her father. 
Defense counsel moved for a mistrial, which was denied.

 Appellant's objection at trial does not comport with his complaint on appeal. 
Tex.R.App.P. 33.1(a); Broxton v. State, 909 S.W.2d 912, 918 (Tex.Crim.App. 1995), citing
Turner v. State, 805 S.W.2d 423, 431 (Tex.Crim.App.), cert. denied, 502 U.S. 870, 112 S.Ct.
202, 116 L.Ed.2d 162 (1991). There were no objections on the basis of judicial bias or prejudice
of the court. See Brewer v. State, 572 S.W.2d 719, 721 (Tex.Crim.App. 1978)(where no
objection is made, remarks and conduct of the court may not be subsequently challenged unless
they are fundamentally erroneous). Appellant contends that the comments and actions allowed
by the court are constitutional error. However, Appellant cites no relevant authority to support
his position.

 The Texas Code of Judicial Conduct prohibits a judge from directly or indirectly
initiating, permitting, or considering ex parte or other private communications concerning the
merits of a pending or impending judicial proceeding except as authorized by law. Tex.Code
Jud.Conduct, Canon 3(B), reprinted in Tex.Gov't Code Ann., tit. 2, subtit. G app. B (Vernon
2005). An ex parte communication is one that involves fewer than all parties legally entitled to
be present during the discussion of any matter. In re Thoma, 873 S.W.2d 477, 496
(Tex.Rev.Trib. 1994), citing Jeffrey M. Shaman, et al., Judicial Conduct and Ethics, § 6.01 at
145 (1990).

 For reversal on the grounds of judicial misconduct, there must be judicial impropriety
coupled with probable prejudice to the complaining party, and rendition of an improper verdict. 
Silcott v. Oglesby, 721 S.W.2d 290, 293 (Tex. 1986), citing Tex. Mexican R. Co. v. Bunn, 264
S.W.2d 518, 527 (Tex.Civ.App.--San Antonio 1953, writ ref'd n.r.e.). A judge is given
discretion to express himself while controlling the trial of a case. Erskine v. Baker, 22 S.W.3d
537, 539-40 (Tex.App.--El Paso 2000, pet. denied), citing Tex. Employers Ins. Ass'n v. Draper,
658 S.W.2d 202, 209 (Tex.App.--Houston [1st Dist.] 1983, no writ).

 An ex parte communication occurred between the trial judge and the complaining
witness, Ms. Caballero. The following is the exchange between Ms. Caballero and Appellant's
counsel during cross-examination that led to the motion for the mistrial:

 THE WITNESS: Yes. And I understand that you have to
cross-examine me, Ms. Martin, and that's
part of the process, but I did tell the judge
this morning that I would not be answering
anymore questions --


 THE COURT: Hold on, hold on. Ms. Caballero, you know,
with all due respect --


 THE WITNESS: Yes, sir.


 THE COURT: -- you let me make the rulings, with all due
respect, and if she asks any questions that
are improper I will -- I will issue or make
my rulings at that time, okay?


 THE WITNESS: I saw the rulings yesterday, Your Honor --


 THE COURT: Okay. All right. Thank you. All right.


 MS. MARTIN: Thank you, Your Honor. May I proceed?


 THE COURT: Yes, ma'am.


 Q.(BY MS. MARTIN): You just told this jury that
you spoke to the judge this
morning? 


 A. Yes, that's correct.


 Q. Okay. And you're a witness?


 A. That's correct.


 Q. And you felt comfortable enough approaching Judge Patrick Garcia to talk
to him about this case and your testimony?


 A. That's right, right in the hallway. That's correct.


 Q. Okay.


 A. What happened in here yesterday was improper. That questioning about
my childhood was improper. About my uniform from high school was
improper. It is not permissible, in courts of law, to ask witnesses, or for
Court's [sic] to permit it. And I should not be treated any differently than
any other witness who walks in the courtroom --


 MS. MARTIN: She's being nonresponsive, Your Honor, and
she's also commenting on the --


 THE COURT: Well --


 MS. MARTIN: -- fact that this judge doesn't know, sir --


 THE COURT: -- hold on. Hold on. You know, she may
disagree or like this Court's rulings, that is
her opinion. But you ask the questions and
she's answering the question. Now --


 MS. MARTIN: Your Honor --


 THE COURT: -- watch the question you ask. Now, what is
your objection to her --


 MS. MARTIN: My objection is I'm making a motion for
mistrial because a complaining witness has
approached the sitting judge in the case --


 THE COURT: All right. Hold on. Hold on. Hold on. 
Hold on.


 MS. MARTIN: -- to discuss this case -- may I finish --


 THE COURT: One second, ma'am. One second. Would
you please step outside?


(Jury not present.)


 THE COURT: I was outside in the hallway, during the
recess, when I was approached by
Ms. Caballero who, in very forthright and
articulate terms, expressed her anger and her
frustration with this Court's rulings
yesterday reference the question -- some of
the questions that were being asked of her by
Ms. Martin on her cross-examination.

 Yesterday when those questions were being asked --
and this -- I will explain, for the record, that I responded to
Ms. Caballero because -- I probably should have just let it
go, but I didn't. I told her the questions being asked by
Ms. Martin reference her uniform, whether -- well, all the
other questions that were reference her childhood, I -- the
objection to relevance was made and, like I always do when
an attorney tells me, Judge, I will tie them in, whether that
attorney be Ms. Martin or Ms. Caballero, because I don't
know what the strategies are and I don't know what the
relevance is until I hear the questions being asked.

 So, therefore, when that is expressed to this Court I
say, Go ahead and ask the questions. And you told me,
Ms. Martin, that you were going to tie it in and make it
relevant. Well, you know, in retrospect, you never did. In
retrospect you never did, and I don't know that you can.


The judge overruled the motion for mistrial, and had the jury return to the courtroom.

 We find that the ex parte communication between the trial court judge and Ms. Caballero
to be error. The comments by the judge and the witness during the trial, however, do not
constitute error given the discretion a judge has to control the trying of a case. Erskine, 22
S.W.3d at 540. Having found error, we must look to see if such error was harmful. Pitt v.
Bradford Farms, 843 S.W.2d 705, 707-08 (Tex.App.--Corpus Christi 1992, no writ).

 The record as a whole must be examined to see if the trial court's impropriety harmed
Appellant. Brown v. Russell, 703 S.W.2d 843, 847 (Tex.App.--Fort Worth 1986, no writ), citing
Walker v. Tex. Employers' Ins. Ass'n, 155 Tex. 617, 291 S.W.2d 298, 301 (1956). We have
examined the record in its entirety, and the record does not show nor has Appellant demonstrated
he suffered probable prejudice. Appellant has also failed to show how the judge's ex parte
communication and the comments made regarding it may have resulted in the rendition of an
improper verdict. In the absence of such a showing, reversal of judgment is not proper. Erskine,
22 S.W.3d at 540, citing Texaco, Inc. v. Pennzoil, Co., 729 S.W.2d 768, 810 (Tex.App.--Houston
[1st Dist.] 1987, writ ref'd n.r.e.), cert. dism'd, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686
(1988).

 We note that a motion for mistrial was made. However, Appellant does not now directly
raise this issue in his brief. The State does brief the issue, so we will address it. The ruling on a
motion for mistrial is reviewed for an abuse of discretion. See Trevino v. State, 991 S.W.2d 849,
851 (Tex.Crim.App. 1999). The ruling is looked at to see if the judge was acting without 
reference to any guiding rules and principles. Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex.1985), citing Craddock v. Sunshine Bus Lines, 134 Tex. 388, 133
S.W.2d 124, 126 (1939). A mistrial is required only in extreme circumstances where prejudice is
incurable. Hawkins v. State, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004). In determining whether
a mistrial should be granted, we look to the particular facts of the case. Ladd v. State, 3 S.W.3d
547, 567 (Tex.Crim.App. 1999). The record contains no evidence that the jurors were influenced
by the comments of the trial judge or Ms. Caballero. This is not an extreme circumstance with
incurable prejudice. We find the trial court did not err in denying Appellant's motion for
mistrial.

 We conclude, after reviewing the record, that none of the court's comments or actions in
this case rise to the level of constitutional error that would have adversely affected Appellant's
right to a fair trial or improperly influenced the jury.

 Having overruled all of Appellant's issues, we affirm the conviction.




November 29, 2007

 DAVID WELLINGTON CHEW, Chief Justice


Before Chew, C.J., Carr, J., and Ables, Judge

Ables, Judge (Sitting by Assignment, not participating)


(Do Not Publish)