Opinion issued March 31, 2011


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-09-00422-CV

———————————

Todd lakner, Appellant 

V.

kristin lynette van houten, Appellee 



 



 

On Appeal from the 257th District Court 

Harris County, Texas



Trial Court Case No. 2008-75138

 



 

MEMORANDUM OPINION

          This
is an appeal from a protective order granted to appellee Kristin Van Houten
against appellant Todd Lakner after a bench trial.  In five issues, Lakner argues that (1) the
evidence is legally and factually insufficient to support the finding that
Lakner committed family violence, (2) the evidence is legally and factually
insufficient to support the finding that Lakner is likely to commit family
violence in the future, and (3) the trial court erred in failing to file
findings of fact and conclusions of law. 
Because findings of fact and conclusions of law have now been filed, we
overrule Lakner’s fifth issue.  We
overrule Lakner’s first four issues because we find the evidence legally and
factually sufficient to support the trial court’s findings.

Background

          Kristin
Van Houten and Todd Lakner dated for approximately one year.  In May 2008, Van Houten broached the subject
of a break-up with Lakner, but Lakner urged Van Houten to try to work things
out.  On July third of that year, Van
Houten made another attempt to break off the relationship and told Lakner to
leave her alone.  The next day, however,
Lakner appeared at Van Houten’s house. 
When Van Houten insisted that the two part ways, Lakner left; but Lakner
returned to Van Houten’s house later that evening.  At that time, Lakner entered Van Houten’s
house and refused to leave for a time, despite being repeatedly asked to leave
by both Van Houten and her father.  In
the days that followed, Lakner continued to contact Van Houten, leaving a
letter in her mailbox and sending her roses at her office.  After his visit to Van Houten’s house on July
fourth, Van Houten told Lakner not to ever come back.  

On July seventh, Lakner returned to
Van Houten’s home, used his vehicle to block Van Houten in her driveway, and
refused to allow her to leave.  Lakner then
got out of his car and began yelling at Van Houten.  Van Houten said that when Lakner tried to
grab her, her ten year old daughter went inside and called the police.  Van Houten described her daughter as scared
by Lakner’s conduct.  Lakner left before
police arrived, but returned while the police were still there.  The police gave Lakner a trespass warning and
instructed him to stay away from Van Houten’s home.  During his conversation with the police, Van
Houten described Lakner as “real red faced” and “belligerent and shaking his
head and his arms.”  Van Houten described
the episode as “very scary.”  

          Van
Houten later became aware that Lakner was following her.  On numerous occasions from July through
December 2008, Lakner trailed Van Houten on roadways around Houston.  Van Houten said that she sighted Lakner
following her at least once a week during this period and that she had never
run into Lakner on these roads while they were dating.  Van Houten relayed one incident in early
November 2008, when Lakner came upon her on a feeder road at a high speed and
cut her off.  She stated that when she
sped up, he sped up and when she slowed down, he slowed down.  She said that this event made her “very
uncomfortable and scared.”  Van Houten
also relayed another incident in late November 2008 when her daughter spotted
Lakner following them; Van Houten testified that her daughter was scared by the
event and appeared “shaken.”  Eventually,
Van Houten asked a friend of hers, Morias Ferhop, to follow her in a separate
car because she was afraid of Lakner. 
Ferhop witnessed Lakner following Van Houten on approximately six occasions.  Ferhop described Lakner’s driving on those
occasions as erratic: running red lights, cutting across multiple lanes of
traffic, and cutting off other drivers.  

Van Houten reported Lakner’s
behavior to the police and began videotaping it.  The investigator obtained records from the Harris
County Southwest Toll Plaza from August through October 2008, which show that
Lakner drove through that toll plaza at approximately the same time as Van
Houten more than a dozen times during that period, frequently passing back
through the same toll plaza minutes later. 
 As a result of his following Van
Houten, the State brought stalking charges against Lakner in December 2008.

          According to Van Houten, a co-worker of
Lakner’s, Matt Lloyd, told her that Lakner had followed her to the circus one
day, where he saw her with another man.  Van
Houten said that Lloyd relayed threats made by Lakner that he was “going to do
whatever he could to get sweet revenge.”  Van Houten also said that Lloyd told her to
“be careful . . . he would put you six feet under.”  At trial, Lloyd denied making these
statements.

On December 29, 2008, Van Houten
filed an application for a protective order, on behalf of herself and her
child, against Lakner.  The application
alleged that Van Houten and Lakner were previously involved in a dating
relationship.  Attached to the
application was Van Houten’s affidavit, stating that Lakner had stalked her
“about once a week since July 7, 2008.” 
Van Houten described several incidents when Lakner followed her in his
vehicle and Lloyd’s warning about Lakner’s threat to put her “six feet under.” 

After a bench trial, the trial
court entered a protective order on January 29, 2009.  The trial court later entered an amended
protective order in response to arguments from Lakner that the January 29 order
interfered with his ability to perform his duties as a firefighter by
restricting his use of certain roadways. 
Lakner subsequently filed a motion for new trial.  In the motion for new trial, Lakner alleged
that “there was no proof of family violence or of dating violence.”  The trial court’s docket sheet indicates
that, at the April 29 hearing, neither Lakner nor his attorney made an
appearance, and accordingly, the motion was denied.  

After Lakner filed this appeal, we
abated the appeal for entry of findings of fact and conclusions of law.  The trial court entered findings of fact and
conclusions of law on November 23, 2010; the trial court entered amended findings
of fact and conclusions of law on December 14, 2010.  The trial court’s amended findings and
conclusions included findings that (1) Lakner followed Van Houten in his
vehicle on multiple occasions; (2) on November 10, 2008, Lakner maneuvered his
vehicle in such a way as to cause Van Houten to be uncomfortable and scared; and
(3) Lakner had stalked Van Houten.  The
trial court’s amended findings and conclusions also included conclusions that
the vehicular conduct and the stalking each constituted family violence and
were likely to occur again in the future. 

Legal and Factual Sufficiency

          In
his first and second issues, Lakner argues that the evidence is legally and
factually insufficient to support a finding that he committed family
violence.  In his third and fourth
issues, Lakner argues that the evidence is legally and factually insufficient
to support a finding that family violence is likely to occur in the
future.       A.      Standard of Review

When the trial court acts as a fact-finder,
we review its findings under the legal and factual sufficiency standards.  In re
Doe, 19 S.W.3d 249, 253 (Tex. 2000); Vongontard
v. Tippit, 137 S.W.3d 109, 112 (Tex. App.—Houston [1st Dist.] 2004, no pet).  When a party who does not have the burden of proof at trial
challenges the legal sufficiency of the evidence, we consider all of the
evidence in the light most favorable to the prevailing party, indulging every
reasonable inference in that party’s favor and disregarding contrary evidence
unless a reasonable fact-finder could not. 
City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005); City of
Houston v. Hildebrandt, 265 S.W.3d 22, 27 (Tex. App.—Houston [1st Dist.]
2008, pet. denied) (citing Assoc. Indem.
Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285–86 (Tex. 1998)).  “If there is any evidence of probative force
to support the finding, i.e., more than a mere scintilla, we will overrule the
issue.”  Hildebrandt, 265 S.W.3d at 27
(citing Haggar Clothing Co. v.
Hernandez, 164 S.W.3d 386, 388 (Tex. 2005)).

In reviewing a factual sufficiency complaint, we must first
examine all of the evidence.  Lofton v. Texas Brine Corp., 720 S.W.2d
804, 805 (Tex. 1986).  Having considered
and weighed all the evidence, we should set aside the verdict only if the
evidence is so weak, or the finding is so against the great weight and
preponderance of the evidence, that it is clearly wrong and unjust.  Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
We cannot merely substitute our opinion for that of the trier of fact
and determine that we would reach a different conclusion.  Hollander
v. Capon, 853 S.W.2d 723, 726 (Tex. App.—Houston [1st Dist.] 1993, writ
denied).

The trier of fact is the exclusive judge of the facts proved,
the credibility of the witnesses, and the weight to be given to their
testimony.   Dyson v. Olin Corp., 692 S.W.2d 456, 458 (Tex. 1985).  When the trier of fact is presented with
conflicting evidence, it may believe one witness and disbelieve others.  McGalliard
v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986).  The trier of fact is permitted to resolve
inconsistencies in the testimony of any witness.  Id.  The trier of fact may also draw inferences
from the facts and choose between conflicting inferences.   Ramo,
Inc. v. English, 500 S.W.2d 461, 467 (Tex. 1973).  We cannot overturn the fact-finder’s ruling
unless only one inference can be drawn from the evidence.  Havner
v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 461 (Tex. 1992).   

B.      Applicable
Law

A trial court shall render a protective order if it “finds
that family violence has occurred and that family violence is likely to occur
in the future.”  Tex. Fam. Code Ann. § 85.001(b) (West 2005).  “Family violence” includes “dating violence,”
which is defined as “an act by an individual that is against another individual
with whom that person has or has had a dating relationship and that is intended
to result in physical harm, bodily injury, assault, or sexual assault or that
is a threat that reasonably places the individual in fear of imminent physical
harm, bodily injury, assault, or sexual assault[.]”  Tex.
Fam. Code Ann. §§ 71.004(3), 71.0021 (West 2005).

C.      Analysis

The crux of each of Lakner’s legal
and factual sufficiency of the evidence challenges is his contention that the
evidence is insufficient because there was no testimony that Lakner “physically harmed” Van Houten.
 This, however, misconstrues the
definition of family violence.  Family
violence does not require actual physical harm; threats that reasonably place
the victim in fear of imminent harm are sufficient.  Tex.
Fam. Code Ann. § 71.004 (West 2005).  Further, no overt express threat of violence
is required to place a reasonable person in fear.  See
Williams v. State, 827 S.W.2d 614, 616 (Tex. App.—Houston [1st Dist.] 1992,
pet. ref’d).  The fact finder may
conclude that an individual perceived fear or was “placed in fear,” in
circumstances where no actual threats were conveyed.  Wilmeth
v. State, 808 S.W.2d 703, 706 (Tex. App.—Tyler 1991, no pet.) (noting fact finder
may find requisite fear from menacing glance and hand gesture, even in absence
of verbal threats).  The  course of conduct between the threatener and
the victim is important to understanding whether there is sufficient evidence
of a threat.  See Olivas v. State, 203 S.W.3d 341, 349–50 (Tex. Crim. App. 2006).

Van Houten told Lakner that their relationship was over.  Rather than discontinuing his contact with Van
Houten, however, Lakner appeared uninvited at her home, refusing to leave on
the first occasion and leaving only after a warning from the police on the
second occasion.  After the police
instructed Lakner to stay away from Van Houten’s home, Lakner began following
Van Houten on the roadways at least once a week for over six months.  The unsafe nature of Lakner’s driving while
following Van Houten is some evidence to support the trial court’s conclusion
that Lakner reasonably placed Van Houten in imminent fear for herself and her
daughter, including the events in November 2008 where Van Houten testified that
Lakner’s erratic driving while following her made Van Houten scared and made
her daughter scared.

Furthermore, Lakner’s coworker, Lloyd, relayed death threats
made by Lakner against Van Houten.  See Battles v. State, 45 S.W.3d 694,
698–701 (Tex. App.—Tyler 2001, no pet.) (noting that veiled threat from
defendant that someone should “watch over” victim’s son was sufficient to place
victim in reasonable fear).  Although
Lloyd denied this at trial, the trier of fact was free to believe Van Houten
and discredit Lloyd.  See Dyson, 692 S.W.2d at 458 (trier of
fact is sole judge of credibility of witnesses); McGalliard, 722 S.W.2d at 697 (trier of fact may believe one
witness and disbelieve another).

The trial court could have reasonably determined that
Lakner’s behavior was threatening and constituted family violence by placing
Van Houten in fear of imminent physical harm or bodily injury.  See Tex. Fam. Code Ann. § 71.004; Sisk v. State, 74 S.W.3d 893, 900 (Tex.
App.—Fort Worth 2002, no pet.) (finding in stalking case that defendant’s
conduct in following victim reasonably constituted threat of bodily injury).  At the time the protective order was entered,
Lakner’s threatening conduct had spanned a period of approximately six months
after the breakup.  In light of evidence
that Lakner had failed to heed past warnings and requests to stop contacting
and following Van Houten, Van Houten testified that  she believed Lakner’s behavior would continue.
 The trial court, therefore, could have
reasonably concluded that it was likely that Lakner would, in the future,
commit further acts of family violence against Van Houten.  Cf. Teel
v. Shifflett, 309 S.W.3d 597, 604 (Tex. App.—Houston [14th Dist.] 2010,
pet. denied) (holding that trial court could reasonably conclude that future
violence was likely based on testimony showing pattern of behavior); Clements v. Haskovec, 251 S.W. 3d 79,
87–88 (Tex. App.—Corpus Christi 2008, no pet.) (holding that a pattern of past
behavior that spans several months, as opposed to isolated incidents, will
support a finding that future violence is likely to occur).

Because there is more than a scintilla of evidence to sustain
the protective order and because the trial court’s decision is not so against
the great weight and preponderance of the evidence as to be manifestly unjust,
the evidence is legally and factually sufficient to sustain the protective
order.

We overrule appellant’s first four points of error.

Conclusion

We
affirm.

                                                                   

 

Elsa
Alcala

                                                                   Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Bland.